John Christopher PORTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–07–00138–CR.

Court of Appeals of Texas,
Waco.

Feb. 27, 2008.

Rehearing Overruled April 1, 2008.

Discretionary Review Refused
Aug. 20, 2008.

See also 2008 WL 553639.

Judith Shields, The Woodlands, for appellant.

David P. Weeks, Crim. Dist. Atty., Huntsville, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

TOM GRAY, Chief Justice.

Porter appeals his conviction for misdemeanor evading arrest or detention. *See* TEX. PENAL CODE ANN. § 38.04(a) (Vernon 2003); *cf. id.* (b) (Vernon 2003). We affirm.

***Sufficiency of the Evidence.*** In Porter's first two issues, he contends that the evidence was insufficient. Porter argues that "Officer Blackshear's continued detention of [Porter] was in violation of the Fourth Amendment." [1] (Br. at 17); *see* U.S. CONST. amend. IV.

■ The Texas Penal Code creates the offense of evading arrest or detention in the following terms: "A person commits an offense if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him."

TEX. PENAL CODE ANN. § 38.04(a). One of "[t]he elements of the offense of evading arrest" is that "the attempted arrest is lawful." *Johnson v. State,* 634 S.W.2d 695, 695 (Tex.Crim.App. [Panel Op.] 1982), *overruled in part on other grounds, Jackson v. State,* 718 S.W.2d 724, 727 (Tex. Crim.App.1986); *accord Alejos v. State,* 555 S.W.2d 444, 448 (Tex.Crim.App.1977) (op. on reh'g); *see Ruffin v. State,* 234 S.W.3d 224, 226 (Tex.App.-Waco 2007, pet. dism'd).

■ The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons . . ., against unreasonable . . . seizures, shall not be violated. . . ." U.S. CONST. amend. IV.

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Brendlin v. California,* —— U.S. —— n. 7, 127 S.Ct. 2400, 2410 n. 7, 168 L.Ed.2d 132 (2007) (quoting *Atwater v. City of Lago Vista,* 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001)); *see Armendariz v. State,* 123 S.W.3d 401, 404 (Tex.Crim. App.2003). "Probable cause" to arrest "exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134

---

1. Porter also argues that the evidence was insufficient (1) that he "appear[ed] in a public place" and (2) that he was "intoxicated to the degree that" he "m[ight] endanger" himself "or another." *See* TEX. PENAL CODE ANN. § 49.02(a) (Vernon 2003). Those arguments concern, as does much of Porter's briefing, Porter's arrest for public intoxication that arose from the same incident as Porter's arrest for evading arrest or detention that is the subject of this appeal. *See id.* § 49.02 (Vernon 2003); (*cf.* Br.; Reply Br.). We today dismiss Porter's attempted appeal of his con-

viction for public intoxication. *See Porter v. State,* No. 10–07–00137–CR, 2008 WL 553639, 2008 Tex.App. LEXIS 1554 (Tex. App.-Waco Feb. 27, 2008, no pet.) (not designated for publication) (mem.op.). We assume without deciding that the evidence was insufficient that Porter appeared in a public place. Because our resolution of Porter's first and second issues does not rely on the public-intoxication arrest as the basis for Porter's arrest for evading arrest or detention, those arguments by Porter have no effect on our holding.

(1959); *see Wong Sun v. United States,* 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Parker v. State,* 206 S.W.3d 593, 596–97 (Tex.Crim.App.2006).

■■■ "[T]he protection against unreasonable seizures" also "extends to 'seizures that involve only a brief detention short of traditional arrest.' " *California v. Hodari D.,* 499 U.S. 621, 639, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (quoting *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)); *see Terry v. Ohio,* 392 U.S. 1, 16–19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Ford v. State,* 158 S.W.3d 488, 493 (Tex.Crim.App.2005). "Beginning with *Terry v. Ohio,* the" United States Supreme "Court has recognized that a law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Sixth Judicial Dist. Court,* 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004) (citing *Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889); *see Ford* at 494. The United States Supreme Court has "acknowledged police authority to stop a person 'when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.' " *United States v. Hensley,* 469 U.S. 221, 227, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (quoting *United States v. Place,* 462 U.S. 696, 702, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (emphasis omitted)); *see Hiibel* at 186, 124 S.Ct. 2451 (citing *Hayes v. Florida,* 470 U.S. 811, 816, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985)); *United States v. Sokolow,* 490 U.S. 1, 7–10, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Ford* at 492. "The officer's action must be 'justified at its inception, and ... reasonably related in scope to the circumstances which justified the interference in the first place.' " *Hiibel* at 185, 124 S.Ct. 2451 (quoting *United*

*States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)) (internal quotation marks omitted) (alteration in *Hiibel*); *see Terry* at 20, 88 S.Ct. 1868; *Davis v. State,* 947 S.W.2d 240, 242 (Tex. Crim.App.1997). "[T]he seizure cannot continue for an excessive period of time...." *Hiibel* at 185–86, 124 S.Ct. 2451 (citing *Place* at 709, 103 S.Ct. 2637).

■■■ "In assessing whether a detention is too long in duration to be justified as an investigative stop," it is "appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe,* 470 U.S. at 686, 105 S.Ct. 1568 (citing *Michigan v. Summers,* 452 U.S. 692, 701 n. 14, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981)); *see Muehler v. Mena,* 544 U.S. 93, 101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005); *Kothe v. State,* 152 S.W.3d 54, 64 (Tex.Crim.App.2004). "[O]nce the original purpose for the stop is exhausted, police may not *unnecessarily* detain" persons "solely in hopes of finding evidence of some other crime." *Kothe* at 64 (emphasis in orig.).

■■■ In evaluating probable cause or reasonable suspicion, we consider the "totality of the circumstances." *Maryland v. Pringle,* 540 U.S. 366, 371–72, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (citing *Illinois v. Gates,* 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *United States v. Arvizu,* 534 U.S. 266, 273–74, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citing *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)); *Castro v. State,* 227 S.W.3d 737, 741 (Tex.Crim. App.2007); *Torres v. State,* 182 S.W.3d 899, 902 (Tex.Crim.App.2005). That evaluation may include consideration of the fact that "[t]he delay in th[e] case was attribut-

able ... to the evasive actions of" the defendant. *Sharpe*, 470 U.S. at 687–88, 105 S.Ct. 1568.

The manner-and-means allegations in the information here charged generally that Porter "did ... intentionally flee from Calvin Blackshear, a person [Porter] knew was a peace officer who was attempting lawfully to arrest or detain" Porter. (1 C.R. at 1.) The trial court, in accord with that allegation, instructed the jury to find Porter guilty if the jury found beyond a reasonable doubt that Porter "did ... intentionally flee from Calvin Blackshear, a person [Porter] knew to be a peace officer who was attempting lawfully to arrest or detain" Porter. (*Id.* at 12); *cf. Hooper v. State*, 214 S.W.3d 9, 14 (Tex.Crim.App. 2007); *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). The jury generally found Porter "*GUILTY* of the offense of evading arrest or detention, as charged in the information." (1 C.R. at 16.)

*Legal Sufficiency.* In Porter's first issue, he contends that the evidence was legally insufficient.

"In assessing the legal sufficiency of the evidence ..., 'we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt.'" *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App. 2007) (internal footnote omitted) (quoting *Hooper*, 214 S.W.3d at 13); *see Jackson v.*

*Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). "Under a legal sufficiency review, 'our role is not to become a thirteenth juror. This Court may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the factfinder.'" *Williams* at 750 (quoting *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim. App.1999)). "Thus, reviewing courts give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper* at 13) (internal quotation marks omitted); *see* Tex.Code Crim. Proc. Ann. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

■ Porter argues, "The evidence is legally insufficient to prove that [Porter] was under a lawful detention because the detention exceeded the scope of a valid detention." (Br. at 17.) Porter points out that "[t]he arrest occurred after at least fifteen to twenty minutes of questioning." (*Id.* (citing 1 R.R. at 116).)

The State points primarily to the following evidence. The arresting officer, Huntsville Police Department Officer Calvin Blackshear, testified that he detained Porter and three other persons present at the scene for investigation of five offenses: consuming alcohol after hours, possession of alcohol by minors, illegal dumping,[2] public intoxication,[3] and unnecessary noise.[4]

---

**2.** The Texas Health and Safety Code creates the offense of "littering," or illegal dumping, in the following terms: "A person commits an offense if the person disposes or allows or permits the disposal of litter ... at a place that is not an approved solid waste site, including a place on ... private property...." Tex. Health & Safety Code Ann. § 365.012(a) (Vernon Supp.2007); *see id.*

§ 365.011(6)(B)(ii) (Vernon 2001); *Celestine v. State*, No. 14–05–01043–CR, 2007 WL 470446, at *2, 2007 Tex.App. LEXIS 1126, at *5 (Tex.App.-Houston [14th Dist.] Feb. 15, 2007, pet. ref'd) (not designated for publication) (mem. op.).

**3.** The Texas Penal Code creates the offense of public intoxication in the following terms: "A person commits an offense if the person ap-

*See* TEX. ALCO. BEV.CODE ANN. §§ 105.06(b), 106.05(a) (Vernon 2007); TEX. HEALTH & SAFETY CODE ANN. § 365.012(a) (Vernon Supp.2007); TEX. PENAL CODE ANN. § 49.02(a); HUNTSVILLE, TEX., CODE OF ORDINANCES § 21.01.05(A), (B)(4), (C) (2007), *available at* http://www.municode.com/Resources/gateway.asp?pid=14355 & sid=43. Officer Blackshear further testified as follows. In patrolling an apartment complex at about 2:00 a.m., Officer Blackshear saw several people "drinking and hollering" at the first-floor balcony or porch of an apartment. (1 R.R. at 81.) When Officer Blackshear approached the apartment, he saw "twenty to thirty," or "dozens of beer bottles or cans spread all around the area" adjacent to the porch. (*Id.*; *id.* at 102.) Officer Blackshear found three other people besides Porter at the apartment: April Hoyt, John Grueneich, and Antonio Simonetti. Officer Blackshear determined that none of the beer cans on the porch was open, and thus dissipated his suspicion of after-hours drinking. By talking to and getting identification from the four and determining their ages, Officer Blackshear dissipated his suspicion of minors in possession. By talking to Porter and the others, Officer Blackshear attempted to investigate the illegal dumping of the bottles and cans, but had not been able to determine if Porter or the others were responsible for it. After talking to the four, Officer Blackshear de-

termined that Grueneich was the resident of the apartment. Officer Blackshear gave Grueneich a citation for unnecessary noise. Officer Blackshear observed Porter's and Simonetti's demeanors, and determined that they were intoxicated and determined the degree of their intoxication. Officer Blackshear arrested Simonetti for public intoxication by handcuffing him. When Porter then turned and attempted to run away, the officers arrested him for evading arrest or detention.

Some of the delay during Porter's detention, moreover, is attributable to evasive actions by Porter. For example, Officer Blackshear testified, when he first approached Porter and asked for his identification and the identity of the resident of the apartment, Porter "kept asking [him] what for," and saying "that he wasn't going to tell [him] who lived there." (1 R.R. at 82.) Officer Blackshear further testified as follows. While Officer Blackshear was talking to Grueneich about the unnecessary-noise violation, Porter

> continuously started hollering that this is bull—bull stuff, except he used other words; that [Blackshear] was there harassing them, that [Blackshear] should be on the border arresting illegal aliens, because [Blackshear] ha[d]n't arrested a single one of them yet. He kept saying, "no, don't give me a ticket, don't give me no F"ing ticket. You had better not

pears in a public place while intoxicated to the degree that the person may endanger the person or another." TEX. PENAL CODE ANN. § 49.02(a).

**4.** The Huntsville Code of Ordinances creates the offense of unnecessary noise in making it an offense "for any person to make, continue or cause to be made or continued any excessive, unnecessary or unusually loud noise or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of others, within the corporate limits of the City." HUNTSVILLE, TEX.,

CODE OF ORDINANCES § 21.01.05(A) (2007), *available at* http://www.municode.com/Resources/gateway.asp?pid=14355 & sid=43. By that section

> are declared to be loud, disturbing and unnecessary noises in violation of this section ... [y]elling, shouting, whistling, or singing on the public streets, particularly between the hours of 11:00 p.m. and 7:00 a.m. or at any time or place so as to annoy or disturb the quiet, comfort, or repose of persons. *Id.* (B), (B)(4).

arrest me mother"—you know what that is. Just continuously, through the whole time [Blackshear] was dealing with [Grueneich].

(*Id.* at 83–84.) Porter appeared very "intoxicated," and "had an extremely aggressive demeanor." (*Id.* at 83.) When Officer Blackshear approached Porter, Porter said that Blackshear "had better bring a fifty person SWAT team if [he] c[a]me" near Porter. (*Id.* at 84.) At that point, Officer Blackshear called for other officers to assist him, and in time Officer Blake Galle and another officer came to the scene.

Porter concedes that:

- "Officer Blackshear identified five reasons [Porter] was being detained," namely the five stated above. (Porter Br. at 16 (citing 1 R.R. at 85, 114–15).)
- "Officer Blackshear stated that his reasonable suspicion to continue to detain [Porter] for littering was because he 'hadn't figured out who did it yet.'" (*Id.* at 17 (quoting 1 R.R. at 101–102).)
- There was a "back and forth" between Officer Blackshear and Porter. (*Id.* (citing 1 R.R. at 98).)

Viewing the evidence in the light most favorable to the verdict, we hold that rational jurors could have believed beyond a reasonable doubt that the duration of Porter's detention for illegal dumping or unnecessary noise was reasonably related to the scope of the investigation of those and the other offenses, and that he was lawfully arrested or detained. The evidence was legally sufficient.

We overrule Porter's first issue.

*Factual Sufficiency.* In Porter's second issue, he contends that the evidence was factually insufficient.

"Evidence may be factually insufficient if: '1) it is so weak'" that the verdict is "'clearly wrong and manifestly unjust or 2) the adverse finding is against the great weight and preponderance of the available evidence.'" *Berry v. State,* 233 S.W.3d 847, 854 (Tex.Crim.App.2007) (quoting *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App. 2000)); *see Watson v. State,* 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006); *Clewis v. State,* 922 S.W.2d 126, 132, 133 (Tex. Crim.App.1996). "[T]he evidence ... is factually insufficient if it is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or" if, "considering conflicting evidence, the jury's verdict, though legally sufficient, is nevertheless against the great weight and preponderance of the evidence." *Berry* at 854 (citing *Watson* at 414–15); *see Rollerson v. State,* 227 S.W.3d 718, 724 (Tex.Crim.App.2007). "Such a factual sufficiency review requires the reviewing court to consider all of the evidence." *Berry* at 854 (citing *Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim.App. 2006), *cert. denied,* —— U.S. ——, 128 S.Ct. 87, 169 L.Ed.2d 66 (2007)). "[T]he evidence is reviewed in a neutral light rather than (as in a legal sufficiency review) in the light most favorable to the verdict." *Roberts v. State,* 220 S.W.3d 521, 524 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 128 S.Ct. 282, 169 L.Ed.2d 206 (2007); *see Johnson,* 23 S.W.3d at 7. "A clearly wrong and unjust verdict occurs where the jury's finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias." *Berry* at 854 (citing *Sells v. State,* 121 S.W.3d 748, 754 (Tex.Crim. App.2003)); *accord Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). "[A]n appellate court must first be able to say, with some objective basis in the record, that the *great weight and preponderance* of the ... evidence contradicts the jury's verdict before it is justified in" reversing for factually insufficient evidence. *Watson* at 417 (emphasis in orig.).

■ Porter appears to argue that the detention of Porter was not justified at its inception. Porter points primarily to the following evidence. "The evidence linking [Porter] to the litter was the fact that he was near the cans," but Officer Blackshear "did not see [Porter] litter." (Br. at 19 (citing 1 R.R. at 101, 115).) Porter denied to Officer Blackshear that the cans were Porter's. Officer Blackshear's stated reason for the noise violation was that Porter and Hoyt were "talking back and forth to each other in a very high tone of voice." (*Id.* at 20 (quoting 1 R.R. at 115).) Officer Blackshear had not received any complaint concerning the noise. Grueneich testified that the four were "talking" and drinking beer. (*Id.* at 21 (quoting 1 R.R. at 135).) Grueneich testified that the cans were not by the porch. Grueneich testified that no "loud conversations," "hollering," or "arguments" were taking place when he became aware of Officer Blackshear's presence. (*Id.* (quoting 1 R.R. at 139).) Hoyt also testified that there was no "loud noise" or "hollering" when Officer Blackshear approached. (*Id.* (quoting 1 R.R. at 152).) Hoyt testified that the beer cans were not next to the porch, but were five feet or more from the apartment. Hoyt testified that Porter offered to pick up the cans. Porter testified that he and Hoyt were having a "regular conversation" when Officer Blackshear approached them, and that no one had complained to them about noise. (*Id.* (quoting 1 R.R. at 165).) Porter testified that the beer cans were not "close to the railing of the apartment." (*Id.* (quoting 1 R.R. at 167).) Porter testified that he did not threaten the officers, but that Simonetti made the remark about a SWAT team. Officer Galle corroborated Officer Blackshear's testimony concerning what occurred after Galle arrived on the scene, including the presence and location of the bottles and cans.

The State points, further, primarily to the following evidence. Officer Blackshear testified that the reasons for his initially detaining Porter were that Porter was on the porch next to which the beer cans were littered, that the four "were the only ones outside drinking at that apartment at 2 a.m. in the morning," and that Porter was in possession of unopened cans of beer and was intoxicated. (Br. at 19 (quoting 1 R.R. at 102).) Officer Blackshear testified that he was also investigating the four's "bunch of loud carrying on" and "bunch of loud talking and hollering." (*Id.* (quoting 1 R.R. at 104).) Officers Blackshear and Galle also testified that Porter continually yelled loudly during his detention.

Considering all of this evidence in a neutral light, we hold that the jury's implied finding that Porter's detention for illegal dumping or unnecessary noise was justified at its inception, that the duration of his detention was reasonably related to the scope of the investigation of those and the other offenses, and thus that he was lawfully arrested or detained, was not clearly wrong or against the great weight and preponderance of the evidence. The evidence was factually sufficient.

We overrule Porter's second issue.

■ *Charge.* In Porter's third issue, he contends that the trial court erred in denying Porter's requested charge pursuant to Texas Code of Criminal Procedure Article 38.23.[5] *See* Tex.Code Crim. Proc. Ann. art.

---

5. Porter requested the instruction in the following terms: "The one issue you have on the Charge, Judge, I don't know whether you've inserted a 3823 instruction, but I'm asking that be included in the charge." (1 R.R. at

177); *see* Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon 2005). We assume without deciding that Porter's request preserves for appellate review the instruction for which Porter argues on appeal. *Cf.* Tex Code Crim. Proc. Ann.

38.23 (Vernon 2005). Article 38.23 provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM. PROC. ANN. art. 38.23(a).

Code of Criminal Procedure Article 36.14 provides that "in each misdemeanor case tried in a court of record, the judge shall ... deliver to the jury ... a written charge distinctly setting forth the law applicable to the case...." TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). Code of Criminal Procedure Article 36.19, in turn, provides:

> Whenever it appears by the record in any criminal action on appeal that any requirement of Article[ ] 36.14 ... has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of [the] defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial.

TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2007).

In *Almanza v. Texas*, the Texas Court of Criminal Appeals:

> concluded that [Article 36.19's] language created two separate harm-analysis standards: the first to be used when a timely objection is made to the charge; the second to be used when no such objection appears in the record.
>
> The first standard dictates that reversal should occur if the defendant made a timely objection and if the error is "calculated to injure the rights of the defendant." [The Court of Criminal Appeals] ha[s] interpreted this to mean that there must be some harm to the defendant from the error. Properly preserved jury-charge error requires reversal unless it is harmless.
>
> If the defendant has not made a timely objection, we apply the second standard, and reversal is not required unless he has not had a fair trial.

*Penry v. State,* 178 S.W.3d 782, 788 (Tex. Crim.App.2005), *cert. denied,* 547 U.S. 1200, 126 S.Ct. 2862, 165 L.Ed.2d 909 (2006) (Tex.Crim.App. quoting TEX.CODE CRIM. PROC. ANN. art. 36.19) (internal footnotes omitted); *see Druery v. State,* 225 S.W.3d 491, 504 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 128 S.Ct. 627, 169 L.Ed.2d 404 (2007); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g). The Court of Criminal Appeals "ha[s] interpreted" the first standard "to mean that any harm, regardless of degree, is sufficient to require reversal." *Druery* at 504 (citing *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996)).

■■■ "In making [a harm] determination, we assess the degree of harm in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and all other relevant information revealed by the record as a whole." *Ellison v. State,* 86 S.W.3d 226, 228 (Tex.Crim.App.2002) (quoting *Almanza,* 686 S.W.2d at 171) (alteration in *Ellison*); *accord Marvis v. State,* 36 S.W.3d

art. 36.19 (Vernon 2007); TEX.R.APP. P. 33.1(a).

878, 880 (Tex.Crim.App.2001); *Hutch,* 922 S.W.2d at 171; *see* Tex.R.App. P. 44.2(b); *Ex parte Smith,* 185 S.W.3d 455, 468 (Tex. Crim.App.2006), *rev'd on other grounds sub nom. Smith v. Texas,* —— U.S. ——, 127 S.Ct. 1686, 167 L.Ed.2d 632 (2007).

The trial court instructed the jury:

> Our law provides that a person commits an offense if the person intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him.
>
> Our law further provides that a police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion that some activity out of the ordinary is occurring or has occurred.

(1 C.R. at 11.) The trial court instructed that the jury could find Porter guilty only if the jury found that Porter "did ... flee from ... a peace officer who was attempting lawfully to arrest or detain" Porter. (*Id.* at 12.) Thus, in finding Porter guilty of evading arrest or detention, the jury necessarily found that the arrest or detention of Porter was lawful. Under the evidence, for the reasons stated above in our resolution of Porter's first two issues, the jury could reasonably have believed that Porter was lawfully arrested or detained for illegal dumping or unnecessary noise. Porter's counsel argued only somewhat generally that Porter had not been legally arrested or detained.

Any error in the trial court's denial of Porter's requested instruction on the legality of the arrest or detention of Porter was harmless.

We overrule Porter's third issue.

CONCLUSION. Having overruled Porter's issues, we affirm.