**Affirmed and Opinion Filed July 26, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00876-CR**
**No. 05-12-00877-CR**
**No. 05-12-00878-CR**

**DOUGLAS RAY MITCHELL,[1] Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause Nos. F11-56332-I, F11-56331-I, F11-71127-I**

## OPINION

Before Justices FitzGerald, Francis, and Lewis
Opinion by Justice FitzGerald

A jury convicted appellant Douglas Ray Mitchell of evading arrest or detention and two

offenses of harassment of a public servant. Appellant raises four issues on appeal. We affirm.

### I. BACKGROUND

**A. Facts**

The only witnesses during the first phase of appellant's trial were several police officers

and one deputy sheriff.

---

[1] In cause number F11-71127-I, appellant was indicted as "Douglas Mitchell." In cause numbers F11-56331-I and F11-56332-I, he was indicted as "Douglas Ray Mitchell." We refer to him as Douglas Ray Mitchell in this opinion.

Dallas police officer Shane Owens testified as follows. On June 8, 2011, Owens was on duty until 11:00 p.m. At about 11:30 p.m., he was driving home from work through the Deep Ellum area of Dallas when he saw appellant standing next to a parking-lot pay box. Appellant was making a kind of stabbing motion while looking over his shoulders, which seemed suspicious to Owens. Owens pulled into the parking lot and could clearly see appellant stabbing something into the holes in the pay box. Owens got out of his car and said, "[H]ey, what are you doing?" He was wearing his full police uniform at the time. He also used his radio to report that someone was breaking into the pay box at his location. Appellant ran away, and Owens followed him in his car. Owens briefly lost appellant, then found him in a parking lot standing against a wall. Owens shined his bright lights on appellant, called in his location, and got out of his car. When he told appellant to step forward and lie on the ground, appellant cursed at him and ran at him. Owens took him to the ground and sat on top of him so that he could not move. Police officers Timothy Payovich and Leonard Garza, who were on bicycle patrol, then arrived on the scene. Owens stayed on appellant until they were able to handcuff appellant. A squad car pulled up, and Owens and Garza walked over to it. Owens then heard appellant "mouthing off, using curse words," and Garza and two other police officers went to assist Payovich. Owens did not participate in this activity, and he did not testify to any further involvement in the case.

Dallas police officer Leonard Garza testified as follows. He and officer Payovich responded to the call to assist Owens. Two female officers arrived at the scene soon after Garza and Payovich did. Payovich handled appellant, and Garza talked with Owens about what had happened. Then Payovich maced appellant, which Garza heard but did not see. Paramedics were called, and they treated appellant at the scene. Then Payovich and Garza escorted appellant to the squad car. Appellant was still belligerent and cursing. When Payovich attempted to fasten appellant's seat belt, appellant spat at Payovich, and some of the spittle got on Garza's arm as

–2–

well. When asked if "it was a little bit of spit," Garza answered, "No. It was one of those where you dig it from real deep." Payovich got "a lot" of spit on his face. When asked whether the spitting was an intentional act, Garza testified, "I would assume so."

Dallas police officer Timothy Payovich testified as follows. He confirmed that appellant had already been subdued when Payovich and Garza arrived at the scene. Payovich handcuffed appellant. Appellant was belligerent, kicking his feet and cursing at Payovich. Appellant began to spit, although not in Payovich's general direction at this time. Payovich told appellant not to spit, but he continued to do it. Payovich then sprayed appellant with a short burst of pepper spray, and appellant stopped kicking and spitting at that point. The paramedics arrived at the scene and treated appellant by washing his face off. Police sergeant Gorka arrived at the scene and told Payovich to put appellant in the back of the police car. Payovich and Garza escorted appellant to the police car. Garza helped appellant into the back seat on the driver's side of the car, while Payovich went to the passenger's side of the car and leaned into the car to fasten appellant's seat belt. Appellant was cursing at Payovich, and then he cleared his throat and spit at Payovich. The spittle covered the left side of Payovich's face.

Deputy sheriff Margaret Brown testified for the purpose of proving that appellant had previously been convicted of evading arrest. During Brown's testimony, the trial judge admitted into evidence documents concerning a 2009 conviction of Douglas Mitchell for evading arrest, including a certificate with a thumbprint. Brown testified that she took a fingerprint from appellant, compared it to the thumbprint associated with the 2009 conviction, and found that they were the same.

## B. Procedural history

Appellant was charged in three indictments with evading arrest or detention after a prior conviction for the same offense, and two offenses of third-degree-felony harassment of a public

servant, namely officers Garza and Payovich. Each of the two harassment indictments included two enhancement paragraphs alleging that appellant had previously been convicted of assaulting a public servant and delivery of a controlled substance. Appellant pleaded not guilty in all three cases, and all three were tried simultaneously. The jury found appellant guilty in all three cases.

Appellant elected for the jury to assess punishment and pleaded not true to the two enhancement paragraphs in the harassment cases. The State called deputy sheriff Brown to testify during the punishment phase of the case in order to prove up the two enhancement paragraphs included in the harassment indictments One paragraph alleged a 2007 conviction for assault of a public servant, and the other alleged a 1993 conviction for delivery of a controlled substance. The evidence introduced through deputy Brown, however, showed that appellant's 1993 conviction was actually for possession of a controlled substance. The State also introduced evidence that appellant had four burglary convictions from 2001 and 2002. Appellant testified during the punishment phase of the trial that he had schizophrenia and that he had had schizophrenia all his life. He also testified that he felt "[c]razy" and that he was not taking any medication. On cross-examination, the State asked appellant whether he had been convicted of various crimes under various cause numbers, including many burglaries. He admitted some of the convictions and not others.

For the evading-arrest conviction, the jury assessed punishment at two years' confinement in a state jail and a $10,000 fine. With respect to the conviction for harassment of officer Garza, the jury found both enhancement paragraphs true and assessed punishment at twenty-five years' imprisonment in the penitentiary. With respect to the conviction for harassment of officer Payovich, the jury found both enhancement paragraphs true and assessed punishment at fifty years' imprisonment in the penitentiary.

The judge rendered judgments on the jury's verdicts. Appellant appealed.

## II. ANALYSIS

### A. Sufficiency of the evidence of guilt

In his first issue on appeal, appellant challenges the sufficiency of the evidence to support his conviction for harassing officer Garza. In his second issue on appeal, appellant challenges the sufficiency of the evidence to support his conviction for evading arrest or detention.

When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict and decide whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Haywood v. State*, 344 S.W.3d 454, 458–59 (Tex. App.—Dallas 2011, pet. ref'd). The jury is the sole judge of the credibility and weight to be attached to the testimony of witnesses. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).

#### 1. Harassment of officer Garza

The elements of this offense as to officer Garza are that appellant, with the intent to assault, harass, or alarm, and with knowledge that officer Garza was a public servant, caused officer Garza to contact appellant's saliva, while officer Garza was lawfully discharging an official duty. *See* TEX. PENAL CODE ANN. § 22.11(a)(2) (West 2011). Appellant argues specifically that there was no evidence that he intended to harass, assault, or alarm Garza, and that the only evidence of intent shows that he intended to spit on officer Payovich. The State argues that there was sufficient evidence of appellant's intent to harass, assault, or alarm Garza.[2]

We conclude that the evidence was sufficient to prove appellant's intent to harass, assault, or alarm Garza. There was evidence that appellant was belligerent towards officers

---

[2] We note that the statute does not appear to require that the defendant's intent to assault, harass, or alarm be directed to any person in particular. *See generally* TEX. PENAL CODE ANN. § 22.11(a)(2); *see also Sanders v. State*, No. 06-05-00104-CR, 2006 WL 23249, at *2 (Tex. App.—Texarkana Jan. 5, 2006, pet. ref'd) (mem. op., not designated for publication) (noting that § 22.11(a)(1) does not require proof of intent to harass any particular officer). But the jury charge required the jury to find that appellant intended to assault, harass, or alarm Garza, and the State agrees that it had to prove appellant intended to harass, alarm, or annoy Garza. So we will assume for purposes of this case that the offense required proof of appellant's intent to harass, alarm, or annoy Garza.

Owens, Garza, and Payovich throughout most of his encounters with those officers. Appellant was spitting even before Garza and Payovich escorted him to the police car, stopping only temporarily when Payovich maced him. The evidence showed that Garza and Payovich cooperated in loading appellant into the back seat of the patrol car, with Garza on the driver's side and Payovich on the passenger's side. Evidence showed that appellant deliberately spat during this process, with Garza testifying that appellant "[dug] it from real deep." The spit got on the left side of Payovich's face and Garza's right arm. The jury could reasonably conclude that for this to happen, both officers had to be very close to appellant—basically leaning into the back seat where appellant was sitting—and that appellant intended to harass, assault, or alarm both of them when he spat on them. The jury could also reasonably conclude that appellant intended his saliva to contact both of the officers. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Intent may also be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant.") (footnote omitted).

We reject appellant's first issue on appeal.

### 2. Evading arrest or detention

A person commits the offense of evading arrest or detention "if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a) (West Supp. 2012). The defendant must know that the officer is trying to arrest or detain him in order to commit the offense. *Jackson v. State*, 718 S.W.2d 724, 726 (Tex. Crim. App. 1986); *Duvall v. State*, 367 S.W.3d 509, 511 (Tex. App.—Texarkana 2012, pet. ref'd). Appellant argues that the State must also prove that the defendant knew that the arrest or detention was lawful. He then argues that the evidence was insufficient that appellant knew officer Owens was a peace officer, that appellant knew Owens was trying to

–6–

arrest or detain him, or that appellant knew Owens's attempt to arrest or detain him was lawful. The State argues generally that the evidence was sufficient.

We reject appellant's arguments. The evidence was sufficient to allow the jury to infer that appellant knew Owens was a police officer when he ran away from Owens. While appellant was standing next to the pay box making suspicious movements, Owens stopped his car and got out wearing his full police uniform. Owens testified that appellant ran only after looking over his shoulder towards Owens:

> Well, he looked over his shoulder and said, what, and as soon as he—he stabbed, like, once or twice more. Then he realized that I was a police officer. He turned around and took off running southbound to the parking lot.

This testimony was sufficient to allow the jury to infer that appellant ran only after he saw Owens's uniform and realized Owens was a police officer. We also conclude that the evidence is sufficient to support the finding that appellant knew officer Owens was trying to arrest or detain him. Owens testified that he got out of his car and yelled, "[H]ey, what are you doing?" at appellant before appellant began running. He was in full uniform. The question Owens asked conveyed that he was suspicious about what appellant was doing and wanted appellant to explain himself. Thus, Owens made a display of authority to appellant and orally conveyed his intention to detain appellant at least long enough to talk to him about what he was doing. The jury could reasonably conclude that appellant knew Owens was trying to detain him by getting out of his car and yelling a question at him.

As for appellant's last argument, we do not agree that the statute required the State to prove that appellant knew that Owens's attempt to arrest or detain him was lawful. Appellant cites no case interpreting § 38.04(a) as he does, and we have found none. One court has said the opposite in dicta. *See Loewe v. State*, No. 03-10-00418-CR, 2011 WL 350462, at *3 n.3 (Tex. App.—Austin Feb. 2, 2011, pet. dism'd) (mem. op., not designated for publication) ("It was not

necessary for the State to prove that appellant knew that the detention was lawful."). Otherwise, courts have generally construed the inclusion of the word "lawfully" in § 38.04(a) to mean that the attempted arrest or detention must be lawful—not that the defendant must know that the attempted arrest or detention is lawful. *See, e.g.*, *Foster v. State*, No. 14-11-00653-CR, 2013 WL 476817, at *5 (Tex. App.—Houston [14th Dist.] Feb. 7, 2013, no pet.) (mem. op., not designated for publication) ("[W]hether the officers were attempting to lawfully arrest or detain appellant was an element of the charged offense."); *Crawford v. State*, 355 S.W.3d 193, 196 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) ("The State bears the burden to prove the lawfulness of the attempted detention."); *Porter v. State*, 255 S.W.3d 234, 236 (Tex. App.—Waco 2008, pet. ref'd) ("One of '[t]he elements of the offense of evading arrest' is that 'the attempted arrest is lawful.'") (citations omitted). The State did not have to prove that appellant knew the attempted arrest or detention was lawful.

We reject appellant's second issue on appeal.

## B. Improper argument

We next consider appellant's fourth issue on appeal, in which he argues that during rebuttal closing argument the State improperly commented on his failure to testify. The State argued as follows:

> And when we talk about intent under the law, who writes the law? Well, we the people, our legislators, our elected body writes the law. And they know— they understand that in order to prove up intent, ***there's never going to be a situation where anybody can bring you, short of crawling inside this man's head, what he was thinking***.

(Emphasis added.) Appellant immediately objected that this constituted a comment on his failure to testify, and the trial judge overruled the objection.

The State violates the defendant's Fifth Amendment rights if it comments on the defendant's failure to testify. *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001).

To determine if a violation has occurred, we view the language used from the jury's perspective, and the implication that the comment referred to the defendant's failure to testify must be clear. *Id.* at 765. Language that "might be construed as an implied or indirect allusion" is not sufficient to constitute a violation. *Id.* (footnote omitted). "The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id.* (footnote omitted). The alleged comment must be analyzed in context. *Id.*

We conclude that the argument in question was not a comment on the defendant's failure to testify under the *Bustamante* test. In context, the comment was an argument that the jury should infer appellant's intent to evade arrest or detention from his conduct. The paragraphs surrounding the comment put it in context:

> So what does the officer do? He does what any good officer would do, what we would expect him to do, go and check up on him. So he drives up closer. He gets out of his car so he makes sure that he knows what he's seeing. He tries to get this man's attention. Hey, you, what are you doing? He turns around—Mr. Mitchell turns around, says, what? And then turns back around and keeps going, but then you can see the wheels turning in his head.

> And when we talk about intent under the law, who writes the law? Well, we the people, our legislators, our elected body writes the law. And they know— they understand that in order to prove up intent, ***there's never going to be a situation where anybody can bring you, short of crawling inside this man's head, what he was thinking***.

> [Objection and ruling.]

> But what the legislature and the law does allow you to do is to infer somebody's intent by their actions. And we have more than enough action to determine what his intent was that night with respect to his evading the officer's request to detain him and to talk to him because he didn't give him a chance to ask him other questions. He took off.

(Emphasis added.) The context makes it clear that the State made the comment in the course of explaining to the jury that circumstantial evidence of intent is sufficient to prove that element of the offense of evading arrest or detention. At most, the comment "might be construed as an

–9–

implied or indirect allusion" to appellant's failure to testify, which does not violate the Fifth Amendment. *Id.* (footnote omitted).

We reject appellant's fourth issue on appeal.

**C.      Sufficiency of the evidence to support enhancement finding**

In his third issue on appeal, appellant challenges the sufficiency of the evidence to support an enhancement allegation that was used in both of the harassment cases. Specifically, the State alleged in the two relevant indictments that appellant had been convicted of delivery of a controlled substance on or about August 6, 1993 in cause number F93-63193 in criminal district court in Dallas County. Appellant pleaded not true to this allegation. The jury charge on punishment submitted this allegation to the jury, and the jury found that it was true. Appellant now argues that the evidence was insufficient to prove this allegation because the evidence showed that appellant had been convicted of possession, not delivery, of a controlled substance. The judgment of conviction introduced into evidence showed that the date of the possession conviction was August 6, 1993, in cause no. F-9363193-NH in the criminal district court of Dallas County. The State acknowledges the discrepancy between the evidence and the jury charge but argues, among other things, that the evidence was sufficient when measured against a hypothetically correct jury charge.

We conclude that the evidence was sufficient. We measure the sufficiency of the evidence against a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). This rule applies to findings necessary to sustain the imposition of an enhanced punishment. *Young v. State*, 14 S.W.3d 748, 750 (Tex. Crim. App. 2000). The hypothetically correct jury question in this case would have asked whether appellant had been previously convicted of possession of a controlled substance, not delivery of a controlled substance. The evidence was legally sufficient to support an affirmative answer to the

–10–

hypothetically correct jury question. And the evidence showed that appellant's 1993 possession conviction was a second-degree felony, which was the same as the enhancement paragraph in this case. *See* TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2012).

This case is similar to *Harrison v. State*, No. 07-08-0155-CR, 2008 WL 4755663 (Tex. App.—Amarillo Oct. 30, 2008, pet. ref'd) (mem. op., not designated for publication). In that case, the punishment jury charge asked whether the defendant had been convicted of burglarizing a habitation in a certain cause number in Tarrant County, and the jury answered yes. *Id.*, 2008 WL 4755663, at *1. The evidence, however, showed that the defendant had actually been convicted of the offense in Dallas County. *Id.* The Amarillo Court of Appeals held that the hypothetically correct jury charge would have asked about Dallas County rather than Tarrant County, and the evidence was sufficient to support a finding under the hypothetically correct charge. *Id.* Accordingly, it affirmed. *Id.*; *see also Ricks v. State*, No. 06-08-00147-CR, 2009 WL 996043 (Tex. App.—Texarkana Apr. 15, 2009, pet. ref'd) (mem. op., not designated for publication) (affirming judgment even though evidence proved a prior conviction under a cause number different from that listed in the punishment jury charge).

We reject appellant's third issue on appeal.

### III. DISPOSITION

For the foregoing reasons, we affirm the trial court's judgments.


/Kerry P. FitzGerald/
—————————————————
KERRY P. FITZGERALD
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
120876F.U05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DOUGLAS RAY MITCHELL, Appellant

No. 05-12-00876-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F11-56332-I.
Opinion delivered by Justice FitzGerald.
Justices Francis and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 26th day of July, 2013.


/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DOUGLAS RAY MITCHELL, Appellant

No. 05-12-00877-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F11-56331-I.
Opinion delivered by Justice FitzGerald.
Justices Francis and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 26th day of July, 2013.


/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DOUGLAS RAY MITCHELL, Appellant

No. 05-12-00878-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 2, Dallas County, Texas
Trial Court Cause No. F11-71127-I.
Opinion delivered by Justice FitzGerald.
Justices Francis and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 26th day of July, 2013.


/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE