

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0873-13

**GARRETT VOGEL, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FIFTH COURT OF APPEALS
DALLAS COUNTY**

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., MEYERS, PRICE, JOHNSON, HERVEY, COCHRAN, and ALCALA, JJ., joined. WOMACK, J., concurred.

**O P I N I O N**

Garrett Vogel petitioned this Court to review the court of appeals' analysis and conclusion that the omission of a Texas Code of Criminal Procedure Article 38.23 instruction in the trial judge's jury charge was harmless. Vogel claims the court erred in assuming, but not deciding, that the omission was an error and holding that the omission harmless. We find error only in the court's substantive harm analysis. We vacate its judgment and remand the

case for further proceedings.

## I. Background

At 1:00 a.m. on December 30, 2007, Dallas Police Officer David Coffie observed that Garrett Vogel's car had a faulty headlight. Officer Coffie stopped Vogel for the equipment violation, and when Vogel rolled down his window, he smelled alcohol emanating from the car. Before stopping Vogel, Officer Coffie did not observe any moving violations or any indication of intoxication in the way Vogel was driving his vehicle. Officer Coffie also smelled alcohol on Vogel's breath after Vogel exited the car. At some point during their interaction, Vogel said that "he might have had a glass of wine or a gin and tonic." Because of his minimal field experience, Officer Coffie requested assistance from a DWI specialist to investigate further. After about ten or fifteen minutes, Officer Bryan arrived.

Officer Bryan testified that Vogel had bloodshot eyes, smelled strongly of alcohol, and had "thick speech," which is an indicator of dehydration. Vogel again admitted consuming alcohol. On suspicion that Vogel was driving while intoxicated, Officer Bryan conducted a number of standardized field-sobriety tests. According to Officer Bryan, Vogel demonstrated the requisite number of clues indicative of intoxication on both the horizontal-gaze-nystagmus and walk-and-turn tests and could not perform the one-legged stand. Vogel declined to submit to a breath or blood test. Officer Bryan placed Vogel under arrest for driving while intoxicated.

Vogel pleaded not guilty, and the case was tried to a jury. Officers Coffie and Bryan

were the only witnesses for the State, and the jury was shown the patrol-car video of the entire incident. Vogel did not seek to suppress any of the admitted evidence obtained as a result of an alleged Fourth Amendment violation through a motion pre-trial or during trial. Instead, after each officer's testimony, Vogel moved for an instructed verdict on the ground that Officer Coffie lacked reasonable suspicion regarding DWI and the incriminating evidence gathered as a result of Vogel's unlawful continued detention was obtained illegally. The judge denied both motions. Vogel testified in his own defense, claiming to have consumed only two alcoholic drinks on the evening of his arrest: a gin and tonic at 7 p.m. and a glass of wine at 8 p.m. He testified that he did not think that his breath smelled of alcohol and he would be surprised if the officers smelled alcohol on him.

After the close of evidence, Vogel requested a jury instruction under Texas Code of Criminal Procedure Article 38.23[1] that would have required the jury to resolve factual issues underlying whether Vogel's continued detention was illegal, and if they so found, to disregard all evidence obtained as a result of the violation. He argued that he had raised a material question of fact regarding the legality of his continued detention by contesting whether Officer Coffie smelled alcohol, and was therefore entitled to the instruction. The

---

[1] TEX. CODE CRIM. PROC. art. 38.23(a) ("No evidence obtained by an officer or other person in violation of . . . the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.").

request was denied. The jury found Vogel guilty of driving while intoxicated.

Vogel appealed, arguing that the denial of his request for an Article 38.23 instruction was error. The Dallas Court of Appeals affirmed his conviction in an unpublished opinion.[2] The court assumed without deciding that excluding Vogel's requested Article 38.23 instruction was erroneous, and decided the case on the basis of harm.[3] We granted review to determine (1) whether a court must first decide the Article 38.23 instruction's omission was erroneous before examining harm and (2) whether the court of appeals' harm analysis was correct.

## II. Court of Appeals' Harm Analysis

Although we express no opinion as to whether the trial judge erred, we find no error in the court of appeals' approach in assuming without deciding error and resolving Vogel's case solely on harm. Because *Almanza v. State* requires both a jury-instruction error and harm, it makes no difference which prong a court of appeals finds wanting in rejecting a claim of reversible jury-charge error.[4] In fact, doing so promotes the virtues of deciding cases on narrower grounds and enhancing judicial efficiency by addressing those elements

---

[2] *Vogel v. State*, No. 05-11-01669-CR, 2013 WL 2467255 (Tex. App.—Dallas Jun. 6, 2013) (mem. op., not designated for publication).

[3] *Id.* at *1.

[4] *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). *See also* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

of a claim that are more quickly and easily resolved.[5]

After assuming without deciding that the judge's refusal to include the Article 38.23 instruction was erroneous, the court of appeals found that Vogel was not harmed by its omission.[6] In *Almanza*, we held that error must be assayed in light of the entire jury charge, and courts should consider the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.[7] Rather than weighing the four *Almanza* factors, the court's harm analysis consisted of the following:

> The potential for harm in failing to instruct the jury flows from the possibility that the jury did not believe [Officer] Coffie's testimony, and instead believed [Vogel's]. But the jury found [Vogel] guilty of DWI, thus finding beyond a reasonable doubt that [Vogel] was intoxicated. The jury could not have believed the very evidence [Vogel] asserts raised a disputed material fact issue and still found him guilty of the offense. Therefore, [Vogel] did not suffer any harm from the failure to give the instruction.[8]

We conclude that the court of appeals' harm analysis was erroneous. The jury's guilty verdict was not necessarily a rejection of Vogel's testimony that he did not smell of alcohol because the two are not logically dependent on one another. To illustrate the point, we note the distinction between this case and the two other courts of appeals opinions the court of

---

[5] *See, e.g.*, *Randolph v. State*, 353 S.W.3d 887, 895 n.32 (Tex. Crim. App. 2011); *Watts v. State*, 99 S.W.3d 604, 615 (Tex. Crim. App. 2003) (Keasler, J., concurring).

[6] *Vogel*, 2013 WL 2467255, at *1.

[7] *Almanza*, 686 S.W.2d at 171.

[8] *Vogel*, 2013 WL 2467255, at *2.

appeals cited in support of its conclusion, *Porter v. State*[9] and *Wilkerson v. State*.[10]

In *Porter*, the arresting officer briefly detained Porter for questioning related to an ongoing party.[11] Before the officer had finished questioning him, Porter attempted to flee.[12] He was arrested for, and then convicted of, evading arrest or detention.[13] The jury was instructed that Porter was guilty if he "intentionally [fled] from . . . a peace officer attempting lawfully to arrest or detain him."[14] The jury was further instructed that "a police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion that some activity out of the ordinary is occurring or has occurred."[15] The trial judge declined Porter's request for an Article 38.23 instruction that stated if his original detention was illegal, then evidence of his attempted flight was illegally obtained and must be disregarded.[16] The Waco Court of Appeals held that any error was harmless because "in finding Porter guilty of evading arrest or detention, the jury necessarily found that the arrest

---

[9] *Porter v. State*, 255 S.W.3d 234 (Tex. App.—Waco 2008, pet. ref'd).

[10] *Wilkerson v. State*, 933 S.W.2d 276 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd).

[11] *Porter*, 255 S.W.3d at 238.

[12] *Id*. at 239.

[13] *Id*.

[14] *Id*. at 243 (emphasis added).

[15] *Id*.

[16] *Id*.

or detention of Porter was lawful."[17] Because the legality of Porter's detention was an element of the crime for which he was convicted, a guilty verdict necessarily encompassed a rejection of any defense based on the illegality of his detention.[18]

In *Wilkerson*, an undercover police officer went to Wilkerson's apartment to carry out an undercover drug buy.[19] The police officer exchanged $20 for crack cocaine that Wilkerson produced from a pill bottle in his pocket.[20] Upon the police officer's signal, an arrest team entered Wilkerson's apartment, and Wilkerson attempted to get rid of evidence by "flushing" it.[21] The police searched Wilkerson's apartment and found another plastic vial with cocaine residue inside.[22] At his trial for delivery of less than 28 grams of cocaine, Wilkerson's defense was that the police officer was lying, and no drug transaction had actually occurred.[23] He challenged the constitutionality of the search of his apartment on the ground that, if no drug transaction occurred, then the police lacked probable cause to conduct the search.[24] He requested an Article 38.23 instruction that if the jury found the search to

---

[17] *Id*. at 243.

[18] *Id.*

[19] *Wilkerson*, 933 S.W.2d at 278.

[20] *Id*.

[21] *Id*.

[22] *Id*.

[23] *Id*. at 281.

[24] *Id*.

have been unlawful, it was to disregard the amount of cocaine obtained during the search.[25]

Although finding the denial erroneous, the First Court of Appeals held the error harmless because Wilkerson's jury convicted him of delivery of a controlled substance, and "in order to find [Wilkerson] guilty of delivery of a controlled substance, the jury must have rejected [Wilkerson's] testimony that no drug transaction occurred."[26]  Similar to *Porter*, in *Wilkerson*, "the evidence showing probable cause was exactly the same as that proving the offense charged."[27]  The presence of probable cause and Wilkerson's guilt were logically dependent.[28]

Here, by contrast, the facts that may or may not have constituted Officer Coffie's reasonable suspicion were not subsumed by the jury's guilty verdict.  The jury's guilty verdict means that the jury found that Vogel was intoxicated at the time of driving.  It does not necessarily carry with it a finding that Vogel smelled of alcohol.  The jury need not find that Vogel smelled like alcohol to convict him for DWI.  Conversely, the lack of an alcohol smell does not mean that Vogel was not guilty.

Unlike the verdicts in *Porter* and *Wilkerson*, the jury's guilty verdict here does not logically dispose of a harm analysis because it was most likely based on the very evidence

---

[25]  *Id*. at 280–81.

[26]  *Id*.

[27]  *Id*.

[28]  *See id*.

the jury may have been required to disregard in finding that the Officer Coffie did not in fact smell alcohol on Vogel's breath or that Vogel did not admit to drinking. If the jury found, in accordance with an Article 38.23 instruction, that Officer Coffie did not reasonably believe that Vogel smelled of alcohol, it then would have been required to disregard Vogel's admission of drinking alcohol, the testimony and video regarding the field-sobriety tests, and Vogel's refusal to submit a breath or blood sample—easily characterized as the most inculpatory pieces of the State's evidence.

### III.  The Proper Standard of Review

*Almanza* established that the level of harm necessary for reversal depends on whether the defendant timely and specifically objected to the jury instructions.[29]  If the defendant did not, then reversal is required only if the error was so egregious and created such harm that the defendant did not have a fair an impartial trial.[30]  If the defendant properly objected, as is the case here, then reversal is required if there was "some harm" to the defendant.[31]  To determine harm, we weigh the following factors:  (1) the jury charge as a whole; (2) the arguments of counsel; (3) the entirety of the evidence; and (4) other relevant factors present in the record.[32]  Even though the "some harm" standard is a low threshold, it nonetheless

---

[29]  686 S.W.2d at 171.

[30]  *Id.*

[31]  *Id.*

[32]  *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

requires the reviewing court to find actual, rather than mere theoretical, harm.[33] Neither party bears the burden on appeal to prove harm or harmlessness.[34]

Both parties claim, however, that the proper harm analysis used for an erroneous failure to include an Article 38.23 instruction is the constitutional-error harm analysis found in Texas Rule of Appellate Procedure 44.2(a). Under this standard, a court must reverse a judgment of conviction or punishment unless it determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.[35] Vogel asserts that this is the harm analysis the court of appeals should have applied because "Article 38.23 is but the statutory embodiment of [the Fourth Amendment] right."[36]

It is true that a constitutional error, even when manifested within a jury instruction, is subject to the constitutional harm standard under Texas Rule of Appellate Procedure 44.2(a) when it was properly preserved by a timely and specific objection at trial.[37] But Article 38.23's jury-instruction requirement is not a constitutional right. While related to the constitutional right against unreasonable searches and seizures, the Texas-specific jury instruction to disregard all evidence obtained in violation of the law is, as Vogel's brief

---

[33] *Id.*

[34] *Id.*

[35] TEX. R. APP. P. 44.2(a).

[36] Vogel Brief on the Merits at 11.

[37] *See, e.g, Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011).

seems to concede, undoubtedly statutory in nature.[38]  There is no federal or Texas constitutional right to have the jury make a fact finding concerning the factual underpinnings of a detention and for the court to instruct the jury on what it must disregard as a result of those findings.  Vogel's complaint involves an alleged statutory violation, and therefore Rule 44.2(a)'s harm analysis does not apply.[39]  Whether the omission of the Article 38.23 instruction harmed Vogel should be reviewed for "some harm" by weighing *Almanza*'s four factors.

## IV.  Conclusion

The court of appeals' judgment is vacated, and the case is remanded to the court of appeals for proceedings consistent with this opinion.

DELIVERED: September 17, 2014

DO NOT PUBLISH

---

[38] *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007) (holding that the right to an Article 38.23 jury charge is a statutory right).  *See Gray v. State*, 159 S.W.3d 95, 97 (Tex. Crim. App. 2005) (holding a violation of a statute that regulates a constitutional right is not itself a violation of a constitutional right).

[39] *See Atkinson v. State*, 923 S.W.2d 21, 27 (Tex. Crim. App. 1996), *abrogated on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002) (holding that a failure to include an Article 38.23 jury instruction should be reviewed under *Almanza* instead of a constitution harm analysis under then-existing Texas Rule of Appellate Procedure 81(b)(2)).